UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEFFREY T. LABARGE and
DENISE LABARGE,

                          Plaintiffs,
    v.                                                **DECISION AND ORDER**
                                                                    03-CV-169S

JOSLYN CLARK CONTROLS, INC.
and TOCCO, INC.,

                          Defendants.

## I. INTRODUCTION

In this action, Plaintiff Jeffrey T. LaBarge alleges that he was electrocuted on March 1, 2000, while repairing an axle hardening machine manufactured by Defendant Tocco, Inc. ("Tocco"), which had been outfitted with a vacuum contactor manufactured by Joslyn Clark Controls, Inc. ("Joslyn"). Plaintiffs assert that the Tocco Machine and the Joslyn Contactor were defectively designed and manufactured, and that Defendants were negligent in failing to warn of those defects. Currently before this Court are Defendants' Motions for Summary Judgment. In addition to summary judgment, Defendants also seek dismissal of the Complaint based on Plaintiffs' spoliation of key physical evidence and exclusion of the proffered testimony of Plaintiffs' expert. For the reasons set forth below, Defendants' Motions are denied insofar as they seek to dismiss the Complaint based on spoliation and granted in all other respects.

## II. BACKGROUND

**A.    Factual Summary**

On March 1, 2000, Plaintiff,[1] a machine repairman at the American Axle facility in Buffalo, New York, was asked to repair a piece of equipment manufactured by Tocco, which was used to harden steel axles. (Def. Joslyn State., ¶¶ 6, 7).[2] Plaintiff alleges that he and other employees with specialized electrical training followed Tocco's instructions for electrically isolating the machine for purposes of carrying out the repair. (Compl., ¶ 8). However, while undertaking repair of the Tocco Machine, Plaintiff suffered electrical shock, which he alleges has left him permanently injured. (Compl., ¶ 9). The Tocco Machine, which was manufactured in the 1960s, had been substantially modified with a new power supply and a programmable logic controller. (Def. Tocco. State., ¶ 4).[3] At the time of the accident, the Tocco Machine was outfitted with a vacuum contactor manufactured by Joslyn, which replaced the Square D contactors that were installed on the Tocco Machine when it was manufactured. (Def. Joslyn State., ¶ 7). After the accident, when a new contactor was put onto the Tocco Machine, the machine functioned normally. (Pl.'s State., ¶ 9).[4]

Following the accident, employees of American Axle, Robert Arnst and Frank

---

[1] The claims of Plaintiff Denise LaBarge are derivative. For the purposes of this motion, any references to "Plaintiff" in the singular relate to Plaintiff Jeffrey LaBarge.

[2] Defendant Joslyn's Statement of Undisputed Material Facts is located at Docket No. 56. Pursuant to Rule 56.1(c) of the Local Rules of Civil Procedure for the United States District Court for the Western District of New York, "all material facts set forth in the statement required to be served by the moving party will be deemed admitted unless controverted by the statement required to be served by the opposing party."

[3] Defendant Tocco's Statement of Undisputed Material Facts appears at Docket No. 51.

[4] Plaintiffs' Statement of Undisputed Material Facts appears at Docket No. 62.

Tominich, arranged to have the Joslyn Contactor sent offsite to Grand Eagle Services ("Grand Eagle") for testing. (Def. Joslyn State., ¶ 9). Grand Eagle was asked to report on the condition of the Joslyn Contactor. (Def. Joslyn State., ¶ 20). At Grand Eagle, the Joslyn Contactor was subjected to electrical testing for approximately one-half hour by technician Timothy Monroe. (Def. Joslyn State., ¶ 21). Mr. Monroe attempted to physically separate one of the contacts in the Joslyn Contactor by hand and concluded that it was "fused closed." (Def. Joslyn State., ¶ 22). At no time was the Joslyn Contactor disassembled or subjected to electrical testing to verify that the contact had in fact fused. (Def. Joslyn State., ¶ 22). Mr. Monroe acknowledged several potential causes for the fused contact, including excessive heat due to a loose connection of the electrical cables to the Joslyn Contactor, the application of excessive current to the unit, and/or the continued operation of the unit after losing the "vacuum" surrounding the contacts. (Def. Joslyn State., ¶ 23).

Grand Eagle returned the Joslyn Contactor to American Axle to the attention of Frank Tominich. (Def. Joslyn State., ¶ 10; Pl.'s State., ¶ 1). Mr. Tominich did not receive the Joslyn Contactor personally, but he assumed the part that failed had been replaced, and the device was returned to service. (Pl.'s State., ¶ 2). Another American Axle employee, Michael Cinelli, saw the shipping box for the Joslyn Contactor in the "parts crib" at the American Axle plant in late 2000 or early 2001. (Pl.'s State., ¶ 3; Def. Joslyn State., ¶ 10). Plaintiff returned to work in August of 2000, approximately. (Def. Joslyn State., ¶ 11). To the best of Plaintiff's knowledge, the Joslyn Contactor had been removed and sent to the manufacturer to examine. (Pl.'s State., ¶ 5). Plaintiff never made a request of American Axle to secure or preserve the Joslyn Contactor. (Def. Joslyn State., ¶ 15). In

late 2002, the "parts crib" was cleaned out and its contents disposed of. (Def. Joslyn State., ¶ 14). Because American Axle disposed of the Joslyn Contactor, Joslyn has not had an opportunity to examine the device to determine the cause of the alleged failure. (Def. Joslyn State., ¶ 25).

Although the accident occurred on March 1, 2000, Plaintiff did not contemplate consulting with an attorney until late in 2002, at which time he took photographs of the Tocco Machine. (Pl.'s State., ¶ 6; Def. Joslyn State., ¶ 17). At that juncture, Plaintiff was aware that the production line using the Tocco Machine was being replaced and would eventually be scrapped. (Def. Joslyn State., ¶ 16). Approximately six months after Plaintiff photographed the Tocco Machine, it was taken out of service by American Axle. (Pl.'s State., ¶ 6).

Plaintiffs claim that at the time Defendants received notice of the lawsuit and removed the matter to federal court, the Tocco Machine was available for inspection. (Pl.'s State., ¶ 7).[5] Sometime shortly thereafter, the Tocco Machine was scrapped such that the parties have been unable to inspect it. (Def. Tocco State., ¶¶ 3, 5). None of Plaintiff's photographs of the Tocco Machine show its serial number or the full extent of its modifications. (Def. Tocco State., ¶ 4).

On March 27, 2005, Plaintiffs' expert, Robert Kremens, Ph.D., rendered a report in which he opined that "[t]he most likely cause of the accident was the fused [Joslyn Contactor] that allowed the current to flow in the alternate station. . . ." (Def. Joslyn State., Ex. K, p. 1). Specifically, Dr. Kremens testified that the "over travel spring" located inside the Joslyn Contactor vacuum bottle "may have failed" causing fusion of the contacts, and

---

[5]Tocco's representative, John Manocchio, swears that as of his first notice of the accident on or about February 20, 2003, the Tocco Machine was unavailable for inspection. (Manocchio Aff., ¶ 3).

4

that this was the "most likely cause" of the accident.  (Def. Joslyn State., ¶ 35).  Dr. Kremens did not render an opinion as to the electrical isolation of the Tocco Machine or the adequacy of the warnings on the machine or the contactor.  (Def. Tocco State., ¶ 7).  Dr. Kremens never examined the Joslyn Contactor, and has never seen a contactor of the model and style at issue in this case, other than in photos.  (Def. Joslyn State., ¶¶ 28, 29).  Moreover, Dr. Kremens never examined the Tocco Machine or its component parts, other than in the photos taken by Plaintiff.  (Def. Joslyn State., ¶ 31).

Defendant Joslyn's expert, John W. Olsen, opined that Mr. LaBarge's accident would not have occurred "[h]ad the machine been designed so that high voltage conductors were not routed through the area where [he] was working."  (Def. Tocco Supp. State., ¶ 3).  Mr. Olsen determined, among other things, that: (1) the lockout procedures of American Axle did not meet minimum industry standards at the time of the accident and, if proper procedures would have been implemented, the accident would not have occurred (Def. Joslyn State., ¶ 47); (2) there was insufficient tangible evidence to determine the cause of the alleged fused contact, but that the most reasonable cause would be the electrical conditions to which the Joslyn Contactor was subjected (Def. Joslyn State., ¶ 48); and (3) ultimately, the precise cause of the alleged failure could not be determined without seeing the machine or the contactor.  (Def. Joslyn State., ¶ 50).

**B.	Procedural History**

Plaintiffs filed this action on February 7, 2003, in the New York State Supreme Court, County of Genesee.  On March 3, 2003, Defendants removed this case to the United States District Court for the Western District of New York.  On October 26, 2005, Defendant Tocco filed a Motion for Summary Judgment.  In addition to summary judgment, Defendant Tocco's Motion also sought dismissal of the Complaint based on Plaintiffs'

5

spoliation of the evidence.⁶  On October 31, 2005, Defendant Joslyn filed a Motion for Summary Judgment, which also sought to dismiss the Complaint on spoliation grounds, and to preclude Plaintiffs' expert.⁷  This Court heard oral argument on January 19, 2006, and reserved decision at that time.

### III. DISCUSSION

**A.     Spoliation of the Evidence**

Spoliation is defined as "the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation."  West v. Goodyear Tire & Rubber Co., 167 F.3d 776, 779 (2d Cir. 1999).  When a party spoliates evidence, a district court may impose sanctions for such spoliation, "exercising its inherent power to control litigation."  West, 167 F.3d at 779 (internal citations omitted).  An appropriate sanction for spoliation must serve "the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine."  Id. (citing Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998)); see also Alvarez v. Pneumoabex, Corp., No. 5:99 CV 1352 FJS/GJ, 2005 WL 2033472, at *6 (N.D.N.Y. Aug. 22, 2005).  That is, "[t]he sanction should be designed to: (1) deter parties from engaging in spoliation; (2) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (3) restore 'the prejudiced party to the same position [it] would have been in absent the wrongful destruction of evidence by the opposing party.'"  West, 167 F.3d at 779 (citing Kronisch, 150 F.3d at 126).

---

⁶In support of its motion, Defendant Tocco filed an affidavit by Robert M. Shaddock with numerous attachments, an affidavit by John Manocchio, a statement of undisputed material facts, a memorandum of law, a supplemental statement of material facts, and a reply memorandum of law.

⁷ In support of its Motion, Defendant Joslyn filed a memorandum of law, a statement of undisputed material facts with numerous exhibits, and a reply memorandum of law.  In opposition to Defendants' Motions, Plaintiff filed a memorandum of law and a statement of undisputed material facts with exhibits.

In the instant case, Defendants Tocco and Joslyn move for dismissal of the Complaint, arguing that Plaintiffs failed to preserve the Tocco Machine and the Joslyn Contactor, and are therefore responsible for the spoliation of key physical evidence. "Dismissal of an action as a sanction for failing to preserve evidence is a drastic sanction." Ramirez v. Avery Berkel, Inc., No. 02 Civ. 6887JSRKNF, 2005 WL 2446231, at *10 -11 (S.D.N.Y. Sept. 30, 2005). Accordingly, dismissal is only "appropriate if there is a showing of willfulness, bad faith, or fault on the part of the sanctioned party." West, 167 F.3d at 779.

This Court finds that the harsh sanction of dismissal is not warranted based on the facts and circumstances in this case. As an initial matter, the record reflects that Plaintiffs did not own, possess, or otherwise control the Tocco Machine or the Joslyn Contactor. In this respect, Defendants cannot show that Plaintiffs were personally responsible for the removal, loss or destruction of this evidence. See, e.g., Bombard v. Gen. Motors Corp., 238 F. Supp. 2d 464, 468 (N.D.N.Y. 2002) (holding that where the evidence showed that the defendant vehicle manufacturer did not have possession of the automobile that was involved in the accident for some period immediately following the accident, it could not be held responsible for removal, loss or destruction of the allegedly defective component of that automobile in a products liability action).

Defendants nevertheless argue that Plaintiff could have moved to enjoin American Axle from destroying the Tocco Machine and the Joslyn Contactor. In the view of this Court, Plaintiffs' failure to take legal action to enjoin American Axle is not analogous to a party's destruction of evidence, which could warrant dismissal of the complaint as a sanction. Moreover, on the record before this Court, there is some dispute as to whether

Plaintiff was even aware that American Axle retained possession of the Joslyn Contactor after the accident. According to Plaintiff, to the best of his knowledge, the Joslyn Contactor had been removed and sent to the manufacturer for examination. In addition, with respect to the Tocco Machine, there is some dispute as to when it was scrapped, and if Plaintiff was aware of when precisely American Axle would destroy the machine. Plaintiffs suggest that the Tocco Machine was available for inspection after the commencement of the case in New York State Supreme Court, but that Defendants failed to inspect the machine before it was destroyed. Under the circumstances, this Court declines to hold Plaintiffs accountable for the destruction of this evidence by a third party. Accordingly, Defendant Tocco and Joslyn's Motions are denied insofar as they seek dismissal of the Complaint on spoilation grounds.

**B.     Admissibility of Expert Testimony Under Federal Rule of Evidence 702**

Defendant Joslyn Clark moves to exclude the proffered testimony of Plaintiffs' designated expert, Robert Kremens, pursuant to Rule 702 of the Federal Rules of Evidence. Under Rule 702, a witness may offer expert opinion testimony when he or she is "qualified as an expert by knowledge, skill, experience, training, or education." FED. R. EVID. 702. If qualified, the witness may draw on "scientific, technical, or other specialized knowledge" to assist in the understanding of the evidence or to determine a fact in issue. Id. However, such a witness may only offer expert opinion testimony if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Id. In this regard, courts are obligated to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." Daubert v.

Merrell Dow Pharm., Inc., 509 U.S. 579, 589, 113 S. Ct. 2786, 2795, 125 L. Ed. 2d 469 (1993). This obligation extends not only to scientific knowledge, but also to technical or other specialized knowledge under Rule 702. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141, 119 S. Ct. 1167, 1171, 143 L. Ed. 2d 238 (1999). Finally, the burden is on the proponent of the expert testimony, in this case Plaintiffs, to establish admissibility by a preponderance of the evidence. See Daubert, 509 U.S. at 592 n.10.

In this Circuit, the requirements to qualify as an expert witness are construed broadly. "Liberality and flexibility in evaluating qualifications should be the rule[;] . . . the expert should not be required to satisfy an overly narrow test of his own qualifications." Bunt v. Altec Indus., Inc., 962 F. Supp. 313, 317 (N.D.N.Y. 1997) (quoting Lappe v. Amer. Honda Motor Co., 857 F. Supp. 222, 226 (N.D.N.Y. 1994)). Nonetheless, the "exclusion of expert testimony for failing to qualify under [Rule 702] lies within the district court's broad discretion." Morse/Diesel, Inc. v. Trinity Indus., Inc., 67 F.3d 435, 444 (2d Cir. 1995); McCullock v. H.B. Fuller Co., 61 F.3d 1038, 1042 (2d Cir. 1995).

Mr. Kremens' curriculum vitae details his considerable academic and professional experience. Defendant Joslyn does not challenge Dr. Kremens' qualifications, except to point out that he is not an electrical engineer by training or education. (Def. Joslyn State., ¶ 27). Dr. Kremens does, however, have a Ph.D. in physics and is employed as an electronic engineer. (Def. Joslyn State., ¶ 27). Viewing Dr. Kremens' expert qualifications liberally as is required under Rule 702, this Court finds that he is sufficiently qualified to meet the admissibility threshold. Having found Dr. Kremens qualified, this Court must now determine whether his proffered testimony is reliable.

The reliability assessment focuses on whether the reasoning or methodology

9

underlying the expert testimony is scientifically valid. Daubert, 509 U.S. at 589-92.[8] To be reliable, expert testimony and the scientific evidence on which it is based must have "a traceable, analytical basis in objective fact." Bragdon v. Abbott, 524 U.S. 624, 653, 118 S. Ct. 2196, 2212, 141 L. Ed. 2d 540 (1998). Moreover, an expert's testimony must be grounded in the methods and procedures of science, and must be more than unsupported speculation or subjective belief. See Daubert, 509 U.S. at 590. That is, an expert's conclusory allegations "absent a statement of the facts upon which they are based, are as insignificant as the conclusory allegations of a party, his attorney, or any other witness." Prohaska v. Sofamor, S.N.C., 138 F. Supp. 2d 422, 437 (W.D.N.Y. 2001) (quoting Sweet v. Elec. Data Sys., Inc., No. 95 Civ. 3987(MBM), 1996 WL 204471, at *6 (S.D.N.Y. Apr. 26, 1996)).

In his report, Dr. Kremens opines that "[t]he most likely cause of the accident was the fused [Joslyn Contactor] that allowed the current to flow in the alternate station (the station normally being loaded or unloaded in a manufacturing operation) as well as the heating station." (Def. Joslyn State., Ex. K, p. 1). Specifically, Dr. Kremens testified that the "over travel spring" located inside the Joslyn Contactor vacuum bottle "may have failed" causing fusion of the contacts and that this was the most "likely cause" of the accident.

---

[8] In Daubert, the Supreme Court set out four non-exclusive factors to aid in the determination of whether an expert's methodology is reliable: (1) whether the theory or technique has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error of the method used and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. Id. at 593-94. These factors, however, apply in cases involving "junk science" or new scientific methods. In cases like this one, where new or unique scientific theories or methods are not implicated, there is no requirement that the Daubert factors be strictly met. See New York v. Solvent Chem. Co., 218 F. Supp. 2d 319, 334 (W.D.N.Y. 2002) (holding the Daubert test inapplicable where new scientific methods are not involved). In any event, the Daubert factors do not constitute a "definitive checklist or test," but rather, must be tailored to the facts of the particular case. Kumho Tire, 526 U.S. at 150-52. Although the Daubert factors are not controlling in this case, they remain useful in assessing reliability.

(Def. Joslyn State., ¶ 35).  Dr. Kremens conceded that he was unable to rule out other causes of the accident not attributable to the Joslyn Contactor, such as loose connections where the external circuitry connected to the contactor, fault currents, or ill treatment of the vacuum switch.  (Def. Joslyn State., ¶ 42).  With respect to these other potential causes for the fusion, Dr. Kremens testified that these "other things can't be ruled out and that's why I said a likely cause."  (Def. Joslyn State., Ex. L, p. 94).  Significantly, although Plaintiffs allege defective design, Dr. Kremens testified specifically that the Joslyn Contactor was not defectively designed.  (Def. Joslyn State., ¶ 34).  Dr. Kremens did not render any opinion as to the electrical isolation of the Tocco Machine or the adequacy of the warnings on either of the Defendants' products.

In formulating his opinion and report, Dr. Kremens never examined the Tocco Machine or the Joslyn Contactor involved in the accident.  He never observed the machine or the contactor in operation.  He never obtained an exemplar vacuum contactor from Joslyn or any other manufacturer for purposes of testing.  He never examined any of the parts that were added to the Tocco Machine after its purchase, such as the programmable logic controller.  He never reviewed any relevant literature regarding the Tocco Machine. He never proposed or sketched an alternative design for the machine or the contactor or identified another manufacturer using an alternative design.  (Def. Joslyn State., ¶¶ 28-33, Ex. K).  Most significantly, Dr. Kremens never examined an over travel spring on any vacuum contactor, and never performed a test to determine whether a failure of an over travel spring will cause the insufficient pressure, resistance path, and heat causing phenomenon that is the basis of his opinion.  (Def. Joslyn State., ¶¶ 36-37).  Indeed, Dr. Kremens ultimately conceded that his testimony was essentially hypothetical or theoretical.

11

(Def. Joslyn State., ¶ 38).[9]

Based on the foregoing, this Court finds that Dr. Kremens' proffered testimony regarding the cause of the fused contact is not the product of reliable methods. See FED. R. EVID. 702. Dr. Kremens' theory that an over travel spring with the Joslyn Contactor bottle "may have failed," causing the contacts to fuse and permit the flow of electricity, fails to meet the standards of Rule 702, specifically because that theory has not been scientifically tested. See, e.g., Cummins v. Lyle Indus., 93 F.3d 362, 368 (7th Cir. 1996) (holding in a design defect and inadequate warning case, that guesswork, even educated hunches by qualified experts is not enough, and evidence must be "genuinely scientific, as distinct from being unscientific speculation offered by a genuine scientist"). As the Supreme Court recognized in General Electric Co. v. Joiner, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed. 2d 508 (1997), "nothing in . . . the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Accordingly, Defendant Joslyn's motion, insofar as it seeks to preclude Dr. Kremens' proffered testimony regarding the alleged failure of the spring is granted, and this Court will disregard his testimony in resolving Defendants' Motions for Summary Judgment.

---

[9]This Court did not find it necessary to hold a Daubert hearing to resolve Defendant Joslyn's request to preclude Dr. Kremens' proffered testimony. Although a hearing is sometimes necessary for the court to properly execute its gatekeeping function, the decision to conduct such a hearing or not rests within the sound discretion of the court. Kerrigan v. Maxon Indus., 223 F. Supp. 2d 626, 632 (E.D. Pa. 2002). "Nothing in *Daubert,* or any other Supreme Court or Second Circuit case, mandates that the district court hold a *Daubert* hearing before ruling on the admissibility of expert testimony, even where such ruling is dispositive of a summary judgment motion." Colon v. BIC USA, Inc., 199 F. Supp. 2d 53, 71 (S.D.N.Y. 2001)

**C.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment is warranted where the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A "genuine issue" exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A fact is "material" if it "might affect the outcome of the suit under governing law." Id. In a case where the non-moving party bears the ultimate burden of proof at trial, the movant may satisfy its burden by pointing to the absence of evidence supporting an essential element of the non-moving party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In deciding a motion for summary judgment, the evidence and the inferences drawn from the evidence must be "viewed in the light most favorable to the party opposing the motion." Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct.1598, 1609, 26 L. Ed. 2d 142 (1970). "Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

**D.     Proving Defect Through Circumstantial Evidence**

Plaintiffs allege that the Tocco Machine and the Joslyn Contactor were defectively

designed or manufactured. In a case such as this, where the allegedly defective product has been lost or destroyed, "the existence of the defect may be inferred from circumstantial evidence, provided that the plaintiff has proven that the product has not performed as intended and has excluded *all other* possible causes of the defect not attributable to the defendant." Sanchez v. Stanley-Bostitch, Inc., No. 98 Civ 0494 LMM, 2000 WL 968776, at *2 (S.D.N.Y. July 13, 2000) (emphasis added); see also Gilks v. Olay Co., 30 F. Supp. 2d 438, 443 (S.D.N.Y.1998) (granting summary judgment in favor of defendant skin cream manufacturer after it presented evidence of other possible causes of the plaintiff's skin condition); Tiner v. Gen. Motors Corp., 909 F. Supp. 112, 118 (N.D.N.Y. 1995) (granting summary judgment in favor of defendant auto manufacturer in a case alleging, *inter alia*, defective design, manufacture and installation of a driver's side seat belt, reasoning that plaintiff failed to offer proof that the seat belt did not perform as intended and failed to exclude all other potential causes for the malfunction, and therefore, concluding that it would be improper to allow the jury to infer that the seat belt was defective); Halloran v. Virginia Chems., Inc., 41 N.Y.2d 386, 388 (1977) (holding that where a "plaintiff has proven that the product has not performed as intended and excluded all causes of the accident not attributable to defendant, the fact finder may, even if the particular defect has not been proven, infer that the accident could only have occurred due to some defect in the product or its packaging"); Rosa v. Gen. Motors Corp., 226 A.D.2d 213, 213 (1st Dep't 1996) (holding that the plaintiff did not establish a *prima facie* case with respect to the claimed defects in the van he was driving, because he failed to exclude all other causes of the accident not attributable to defendants).

If a plaintiff meets these two requirements, the burden shifts to the defendant to

present evidence that the accident was not necessarily attributable to a defect in its product. New York Cent. Mut. Fire Ins. Co. v. Toyota Motor Sales Co., No. 03-CV-0083(E)(SR), 2004 WL 2643172, at *5 (W.D.N.Y. Nov. 18, 2004). "However, if a defendant comes forward with any evidence that the accident was not necessarily attributable to a defect, the plaintiff must then produce direct evidence of a defect." Winckel v. Atlantic Rentals & Sales, Inc., 159 A.D.2d 124, 127 (2d Dep't 1990) (citing cases).

In the instant case, Plaintiffs have not presented any direct evidence of a specific defect in the Tocco Machine or the Joslyn Contactor. In the absence of any direct, physical evidence, Plaintiffs must demonstrate through circumstantial evidence that the Tocco Machine and the Joslyn Contactor were defectively designed or manufactured. Plaintiffs contend that American Axle had a preventative maintenance plan for all of its machines pursuant to which maintenance personnel would look for evidence of loose connections or heat damage in the machines on "roughly" monthly intervals. (Pl.'s State., ¶ 15). According to the Complaint, March 1, 2000, Plaintiff electrically isolated the Tocco Machine, consistent with Tocco's instructions, before attempting to repair it. While Plaintiffs allege this fact, they cite no evidence in the record that such precautionary measures were taken before Plaintiff undertook his repair of the machine.[10] The record clearly reflects that electricity was flowing through the machine when Plaintiff attempted the repair, and that following the accident, Mr. Monroe of Grand Eagle concluded that a

---

[10] Further, it is not this Court's duty or function to search the record in support of Plaintiffs' allegations or arguments. See Amnesty Am. v. Town of West Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (holding that "[Rule 56] does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute"); Smith v. Ward Leonard Elec. Co., Inc., No. 00 Civ. 3703, 2004 WL 1661098, at *3 n.2 (S.D.N.Y. July 23, 2004) (reasoning that "[i]t is the job of Plaintiff's counsel, not the Court, to identify evidence sufficient to avoid summary judgment").

contact within the Joslyn Contactor may have fused into a closed position. While this evidence arguably shows that the Tocco Machine and the Joslyn Contactor did not perform as expected, it does not, in the view of this Court, exclude all other possible reasons not attributable to Defendants as to why the contact fused and electricity was flowing through the machine.

Moreover, Defendant Joslyn has provided evidence that the accident was not necessarily attributable to a defect in its contactor. Defendant Joslyn cites to the deposition testimony of Mr. Monroe, in which he acknowledged several potential causes for why the contact within the contactor may have fused, including excessive heat due to a loose connection of the electrical cables to the Joslyn Contactor, the application of excessive current to the unit, and continued operation of the unit after losing the vacuum surrounding the contacts. Defendant Joslyn's expert, John W. Olsen, opined that American Axle's lock out procedures did not meet minimum industry standards at the time of the accident and, if proper procedures would have been implemented, the accident would not have occurred, and further that the electrical conditions to which the Joslyn Contactor was subjected is the most reasonable explanation for why the contact fused closed.[11] Mr. Olsen also suggested that had the Tocco Machine been designed so that the high voltage conductors were not routed through the area where Mr. Labarge was working, his accident may not have occurred at all.

Defendant Tocco has also cited to evidence of potential causes of the accident other than a design or manufacturing defect in its machine. Specifically, it has pointed to

---

[11] Plaintiffs' own expert testified that he could not exclude the possibility that loose connections, fault currents, or ill treatment of the vacuum switch were possible causes for the fusion. So, even if Dr. Kremens' testimony had not been excluded, Plaintiffs could not have relied on it to exclude *all other* causes for the accident which were not attributable to Defendants.

the substantial modifications made to Tocco Machine it since it was sold in the 1960s. Those modifications include: replacement of the original Square D contactors with the Joslyn Contactors; replacement of the power supply, and the addition of a programmable logic controller. Tocco also contends that because the machine has been destroyed, it cannot ascertain whether additional modifications were made to the machine other than those depicted in Plaintiff's photographs. For example, Tocco proposes that modifications to the machine after it was sold could have compromised the interlocks, which prevent power from being turned on in either of two machines working in tandem when the cabinet doors of either machine are open. (Def. Tocco Mem., p. 8).

Based on the foregoing, this Court finds that Plaintiffs have failed to meet their burden to exclude all other causes of the accident that are not attributable to Defendants Joslyn and Tocco. In this respect, Plaintiffs have failed to establish an essential element of their *prima facie* case of a design or manufacturing defect in either the Tocco Machine or the Joslyn Contactor. Having failed to demonstrate a defect in either product, Plaintiffs' claim that Defendants were negligent in failing to warn of a defect necessarily fails. Although not required to do so, Defendants have come forward with evidence that the accident was possibly attributable to something other than a defect in the Tocco Machine or the Joslyn Contactor. Accordingly, Defendants are entitled to summary judgment on Plaintiffs' defective design, manufacturing defect and failure to warn claims.

### IV. CONCLUSION

Based on the foregoing, this Court finds that Plaintiffs' failure take legal action to enjoin American Axle is not analogous to a party's intentional or negligent destruction of evidence, which could warrant dismissal of the complaint as a sanction. Accordingly,

Defendants' request to dismiss the Complaint based on Plaintiff's spoliation of the evidence is denied.  Second, this Court finds that Dr. Kremens' proffered testimony regarding the cause of the fused contact is not the product of reliable methods and, therefore, must be excluded.  Lastly, this Court finds that Plaintiffs have failed to meet their burden to exclude all other causes of the accident that are not attributable to Defendants Joslyn and Tocco.  Accordingly, Defendants Tocco and Joslyn are entitled to summary judgment on all of Plaintiffs' claims.

## V.  ORDERS

IT HEREBY IS ORDERED, that Defendant Tocco's Motion for Summary Judgment (Docket No. 48), is GRANTED in part and DENIED in part, consistent with the foregoing decision.

FURTHER, that Defendant Joslyn's Motion for Summary Judgment (Docket No. 54), is GRANTED in part and DENIED in part, consistent with the foregoing decision.

FURTHER, that the Clerk of the Court shall take the necessary steps to close this case.

SO ORDERED.

Dated:     September 25, 2006
           Buffalo, New York

                                         /s/William M. Skretny
                                         WILLIAM M. SKRETNY
                                         United States District Judge